**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------X

LOURDES PEREZ,

Civil Action No. 20-cv-3341

Plaintiff,

-against-

**COMPLAINT**

THE PORT AUTHORITY OF NEW YORK & NEW JERSEY, PORT AUTHORITY POLICE BENEVOLENT ASSOCIATION INC., and SCOT POMERANTZ, individually and JOSEPH BRENNECK, individually,

Plaintiff Demands a Trial By Jury

Defendants.

---------------------------------------------------------------------X

Plaintiff, LOURDES PEREZ, (hereinafter referred to as "Plaintiff" or "Plaintiff LOURDES"), by and through Plaintiff's attorneys, **DEREK SMITH LAW GROUP, PLLC,** as and for Plaintiff's Complaint in this action against the Defendants THE PORT AUTHORITY OF NEW YORK & NEW JERSEY, PORT AUTHORITY POLICE BENEVOLENT ASSOCIATION INC., SCOT POMERANTZ, and JOSEPH BRENNECK (hereinafter collectively referred to as Defendants), respectfully alleges as follows upon information and belief:

## NATURE OF THE CLAIMS

1. This action is brought to remedy, *inter alia*, Defendants' unlawful discrimination against Plaintiff PEREZ with respect to Plaintiff's employment on the basis of sex, gender, race and skin color along with a hostile work environment, retaliation as a result of Plaintiff's opposition to these unlawful practices. Through their unlawful and discriminatory conduct, Defendants violated, *inter alia*, Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e et. Seq. ("Title VII"), 42 U.S.C. § 2000e et. Seq. ("Title VII"), 42 U.S.C. §1981, New York

State Human Rights Law; New York Executive Law, § 290, et seq. ("the Executive Law"); the Administrative Code of the City of New York 8-107 et seq. ("NYCHRL"); and any and all other causes of action which are alleged and/or can be inferred from the facts set forth herein.

**JURISDICTION AND VENUE**

2. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 in that the action involves federal questions, because the causes of action asserted herein arise in part under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C § 2000e et. Seq. ("Title VII"), and 42 U.S.C. § 1981 ("1981"), to remedy violations of the laws of the State of New York and City of New York based upon Federal Questions and the supplemental jurisdiction of this Court pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966) and 28 U.S.C. § 1367, seeking declaratory and injunctive relief and damages to redress the injuries Plaintiff suffered as a result of being discriminated against and retaliated against by Plaintiff's employer on the basis of Plaintiff's sex, gender, race, and skin color as well as a hostile work environment.
3. 28 U.S.C. §1331 states that "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."
4. Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC").
5. On or about January 30, 2020, Plaintiff received a Notice of Right to Sue letter from the EEOC.
6. Plaintiff satisfied all administrative prerequisites and is filing this case within ninety (90) days of receiving the Right to Sue Letter.
7. Venue is proper in this District based upon the fact that the events or omissions which gave rise to the claims asserted herein occurred within the Southern District of New York.

**PARTIES**

8. Plaintiff LOURDES PEREZ (hereinafter referred to as "Plaintiff" or "Plaintiff LOURDES") is seeking damages to redress the injuries Plaintiff suffered as a result of being discriminated against by her employer, *inter alia*, on the basis of her sex, gender, race and skin color together with being subjected to a hostile work environment, discrimination, and retaliation.
9. Plaintiff is an individual Hispanic woman who is a resident of the State of New York, County of Bronx, with over twenty (20) years' worth of experience as a Police Officer.
10. At all times material, Defendant THE PORT AUTHORITY OF NEW YORK & NEW JERSEY (hereinafter referred to as "Defendant PORT AUTHORITY and/or "PORT AUTHORITY") is a domestic not-for-profit corporation duly existing by the virtue and laws of both the State of New York and the State of New Jersey that oversees regional transportation across the United States.
11. At all times material, Plaintiff was an "employee" of PORT AUTHORITY within the meaning of the aforementioned statutes.
12. At all times material, PORT AUTHORITY acted by and through their employees, agents, and servants who were acting in the scope and course of employment, agency and servitude.
13. Upon information and belief, at all times material, PORT AUTHORITY met and meet the definition of an "employer" under all applicable state and local statutes.
14. At all times material, Defendant PORT AUTHORITY POLICE BENEVOLENT ASSOCIATION INC. (hereinafter referred to as "Defendant PAPBA" or "PAPBA") was, and still is, a domestic not for profit corporation duly authorized and existing under the laws of the State of New York.
15. At all times material, Defendant SCOT POMERANTZ (hereinafter referred to as "Defendant POMERANTZ" and/or "POMERANTZ") was and is a Police Lieutenant for PORT

AUTHORITY. POMERANTZ held supervisory authority over Plaintiff, controlling many aspects of Plaintiff's job duties. POMERANTZ held the power to hire and fire Plaintiff.

16. As Plaintiff's supervisor, POMERANTZ has also aided and abetted the unlawful conduct described herein.

17. At all times material, Defendant JOSEPH BRENNECK (hereinafter referred to as "Defendant BRENNECK" and/or "BRENNECK") was a Police Sergeant for PORT AUTHORITY. BRENNECK held supervisory authority over Plaintiff, controlling many aspects of Plaintiff's job duties. BRENNECK held the power to hire and fire Plaintiff.

18. As Plaintiff's supervisor, BRENNECK has also aided and abetted the unlawful conduct described herein.

19. At all times material, Defendant RICK COTTON (hereinafter referred to as "Defendant COTTON" and/or "COTTON") was and is the Executive Director of PORT AUTHORITY. COTTON held supervisory authority over Plaintiff, controlling many aspects of Plaintiff's job duties. COTTON held the power to hire and fire Plaintiff.

20. As Plaintiff's supervisor, COTTON has also aided and abetted the unlawful conduct described herein.

21. At all times material, after February 23, 2019, Plaintiff was and is a former employee of PORT AUTHORITY.

**<u>FACTUAL ALLEGATIONS</u>**

22. On or around September 27, 2002, Defendants hired Plaintiff as a Police Officer at PORT AUTHORITY.

23. At all times material, Defendants failed to promote Plaintiff and discriminated against Plaintiff on the basis of her sex, gender, race and skin color.

24. At all times material, approximately every three (3) years, PORT AUTHORITY compiles a list of Promotional Recommendations for Police Officers (hereinafter referred to as "the Recommendation List"), employed by PORT AUHTHORITY, who supposedly show exceptional promise for the Sergeant position.

25. At all times material, PORT AUTHORITY failed to list more than a miniscule fraction of people of color and minority women almost never made the list.

26. By way of example, as of June 21, 2018, the Recommendation List contains the names of only four (4) female officers out of a total of one hundred and 91 (191) Police Officers on site.

27. Most appalling, there is currently only one female Hispanic Sergeant employed by PORT AUTHORITY.

28. The first female Hispanic that PORT AUTHORITY promoted to Sergeant occurred in or around 2005. PORT AUTHORITY was established in 1921.

29. At all times material, Plaintiff was and is exemplary at her job and highly respected in her department, having served on duty on the site of Ground Zero on September 11, 2001. Plaintiff has faithfully and loyally served the citizens of New York City for well over a decade. Being a patrol police officer, Plaintiff is a steady desk officer. Plaintiff works hand-in-hand with Sergeants, Lieutenants and office staff. Plaintiff prepares roll calls, payroll, overtime for officers and supervisors, and receives emergency and non-emergency calls that come to the police desk. It is important to note that not all officers have this training.

30. At all times material, Plaintiff holds a Master's Degree from Seton Hall University.

31. At all times herein, Plaintiff was an exemplary employee who did not disobey orders or directives from her superiors. Plaintiff performed all duties assigned in a diligent and upstanding manner.

32. In or around 2009, Plaintiff passed the Sergeant's Examination with top marks.

33. Defendants denied Plaintiff the position, and even the opportunity for the position, by overlooking her in preparing the Recommendation List.

34. Upon information and belief, it is widely known amongst Plaintiff's colleagues that PORT AUTHORITY has a corrupt history of nepotism and favoritism towards white Police Officers, and outright discrimination against officers who do not appear white enough for the role.

35. Notably, at the beginning of her career, STABILE boldly questioned Plaintiff, "**HOW DID YOU GET THIS JOB WITH *THAT* ACCENT**?"

36. In or around 2018, Plaintiff took and passed the Sergeant's Examination a second time, topping her previous result with an eighty-eight (88%) percent score.

37. Again, Defendants denied Plaintiff the position, and the opportunity for the position of Sergeant, by choosing to keep her name off the Recommendation List.

38. A majority of the men on the 2018 Recommendation List, as well as in previous years, do not hold the tertiary-level educational credentials that Plaintiff holds, nor do they have Plaintiff's years of experience.

39. Defendants have promoted several Sergeants despite significant criminal infractions on their records.

40. PORT AUTHORITY employee, LT. HARRISON (hereinafter referred to as "HARRISON"), was Plaintiff's direct supervisor and had provided Plaintiff with a glowing evaluation.

41. PORT AUTHORITY employee, LT. THOMAS MICHAELS (hereinafter referred to as "MICHAELS") worked closely with Plaintiff and often referred to Plaintiff as "Sarge" or "Seargant" while on the job.

42. When Defendants' decision to preclude Plaintiff from the Recommendation List was communicated to MICHAELS, he expressed total disbelief that Plaintiff had not been selected.

43. MICHAELS asked, "**Why didn't you get it?**" clearly expressing it could not have been because of her lack of experience or qualifications.

44. Defendants' decision to preclude Plaintiff from the Recommendation List was motivated by their discriminatory animus towards her on the basis of her race, skin color, and sexs.

45. In or around the summer of 2018, Plaintiff opposed Defendants' discrimination, requesting true consideration and a proper interview.

46. On or about August 12, 2018, Defendants held a panel interview for Plaintiff with three (3) white men, whom she did not know.

47. It is widely known that PORT AUTHORITY Sergeant candidates are typically interviewed by at least one interviewer with whom they have made direct acquaintance before.

48. Defendants denied Plaintiff the position.

49. Defendants' decision to deny Plaintiff the position was motivated by their discriminatory animus towards her on the basis of her race, skin color, gender and sex.

50. On or about October 4, 2018, Plaintiff filed an internal complaint with PORT AUTHORITY's Human Resources representatives regarding Defendants' racial and gender-based discrimination.

51. However, no actions were ever taken to stop Defendants' discriminatory treatment of Plaintiff.

52. Beginning the very next day, on or about October 5, 2018, Defendants initiated a discriminatory campaign of retaliation targeted against Plaintiff that included, *inter alia,*

reconfiguring Plaintiff's assignments in a way that is typically reserved for much newer officers on the job and placing Plaintiff under unusually strict scrutiny following her complaint.

53. By way of example, on or about October 5, 2018, POMERANTZ changed Plaintiff's post at the 9/11 Memorial to Hub 3, a post that Plaintiff assigned to herself as she was in charge of the schedule.

54. When Plaintiff arrived at work later that morning, she discovered that someone had changed her assignment.

55. PORT AUTHORITY employee, Police Officer MORENO (hereinafter referred to as "MORENO") informed Plaintiff that POMERANTZ made the switch.

56. Plaintiff asked POMERANTZ to change her post back to what was originally scheduled.

57. POMERANTZ denied the request.

58. Upon information and belief, POMERANTZ's assignment change and refusal to reverse same was an attempt to disrupt Claimant's schedule in direct retaliatory response to Claimant's engaging in protected activity. The proximity in time to Plaintiff's complaint to PORT AUTHORITY's Human Resources is undeniable.

59. Other PORT AUTHORITY employees who had not made similar complaints about discrimination did not have their schedules disrupted. Similarly, requested shift adjustments were granted to other employees after Plaintiff's requested shift adjustment was denied.

60. The above represents just some of the many tangible adverse employment actions that Defendants took against the Plaintiff.

61. By way of further example, on or about October 15, 2018, POMERANTZ interrupted Plaintiff's personal relief time that had been previously approved by supervisory authority to demand her whereabouts.

62. By way of further example, on or about October 18, 2018, POMERANTZ sent Plaintiff on a duty call outside her designated post area.

63. Several officers who would normally have been assigned this task were available to take the task. However, Plaintiff was deliberately selected to humiliate and intimidate Plaintiff into obediently accepting a demotion in status.

64. When Plaintiff showed up to take the report per POMERANTZ's orders, several of her co-workers asked Plaintiff why she was assigned the task, in light of her senior position and the availability of several junior officers more suited to the task.

65. Plaintiff felt embarrassed and shocked at this unfair treatment.

66. This was highly unusual, retaliatory behavior as a change in post like this would never happy to another officer with twenty (20) years of service.

67. By way of further example, on or about October 19, 2018, POMERANTZ ran out of his office to sign Plaintiff's memo book a second time for absolutely no reason.

68. POMERANTZ and PORT AUTHORITY actively recruited other PORT AUTHORITY employees to expand Defendants' campaign of retaliation against Plaintiff geared to paint Plaintiff as a bad performer and/or force the Plaintiff out of the PORT AUTHORITY.

69. By way of example, on or about February 23, 2019, BRENNECK counseled Plaintiff on a minor clerical error Plaintiff made in the month prior.

70. BRENNECK explicitly told Plaintiff that he was ordered to counsel Plaintiff on this by POMERANTZ.

71. Counselling would not occur for such minor clerical errors. Until this point, Plaintiff had not been subjected to any disciplinary issues by PORT AUTHORITY.

72. BRENNECK admitted to Plaintiff that he was only counselling her because POMERANTZ ordered him to do so.

73. BRENNECK's counseling was, in actual fact, simply a means of further harassing and retaliating against Plaintiff for engaging in protected activity.

74. The above-described conduct demonstrates that the Plaintiff was, and still is, being treated, differently because she complained of unlawful conduct.

75. Plaintiff is being actively targeted by Defendants who are illegally utilizing Port Authority Police Department procedures and false representations to discredit her, to sabotage his career as a PORT AUTHORITY employee, to defame her professional reputation and to damage her financially.

76. On an ongoing and continuing basis, Plaintiff has been and continues to be subjected to wrongful, law-violating, punitive acts in a continuous campaign of harassment and vilification by Defendants.

77. Defendants devised, implemented, and executed a scheme through which they gave disparate, preferential treatment to certain employees, while those Defendants knowingly and intentionally denied equal treatment and benefits to others including Plaintiff.

78. Defendants discriminated against Plaintiff based on her race, skin color, gender and sex and because Plaintiff complained or opposed the unlawful conduct of Defendants related to the above protected classes.

79. Defendants' failure to promote Plaintiff accounts for a salary loss of at minimum $30,000 a year, totaling at minimum $300,000 over a span of ten (10) years since Plaintiff first succeeded on the Sergeant's examination. This amount does not include calculations for overtime and corresponding reductions in Plaintiff's pension over this period of time.

80. Not only did Defendants neglect to take corrective action against their own failure to promote a well-qualified candidate, but actively retaliated, and continue to retaliate, against Plaintiff for pointing out Defendants' biases to Human Resources.

81. The above are just some examples of the unlawful discrimination and retaliation to which Defendants subjected Plaintiff.

82. As a result of Defendants' unlawful and discriminatory actions, Plaintiff has endured unlawful humiliation, degradation, victimization and embarrassment resulting in extreme emotional distress, severe depression, extreme anxiety, and physical ailments.

83. As a result of Defendants' unlawful and discriminatory actions, Plaintiff has endured financial hardships and irreparable damage to Plaintiff's professional reputation.

84. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation, which such employment entails. Plaintiff has also suffered pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff further claims aggravation, activation, and/or exacerbation of any preexisting condition.

85. As Defendants' actions were malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages against Defendants, jointly and severally.

86. Plaintiff claims alternatively (in the event Defendants claim so or that the Court determines) that Plaintiff is an Independent Contractor, and Plaintiff makes all applicable claims for the above conduct and facts under the applicable law pertaining to Independent Contractors.

87. Plaintiff claims a continuous practice of discrimination and makes all claims herein under the continuing violations doctrine.

**AS A FIRST CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER TITLE VII**
**(AGAINST DEFENDANT PORT AUTHORITY)**

88. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

89. Title VII states in relevant part as follows:

(a) Employer practices: It shall be an unlawful employment practice for an employer:

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;

90. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon the unlawful employment practices of the above-named Defendant. Among other discriminatory comments and conduct, PORT AUTHORITY discriminated against Plaintiff on the basis of Plaintiff's race, color, and sex, and creating a hostile work environment. Plaintiff complains of Defendant PORT AUTHORITY's violations of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's race, color, or sex.

91. PORT AUTHORITY engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e et seq., by harassing and otherwise discriminating against Plaintiff as set forth herein.

92. PORT AUTHORITY violated the above and Plaintiff suffered numerous damages as a result.

**AS A SECOND CAUSE OF ACTION**
**FOR RETALIATION UNDER TITLE VII**
**(AGAINST DEFENDANT PORT AUTHORITY)**

93. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

94. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because she has opposed any practice made an unlawful employment practice by this subchapter, or because she has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

95. Defendant PORT AUTHORITY engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e seq. by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of Plaintiff's opposition to the unlawful employment practices of Defendants.

96. PORT AUTHORITY violated the above and Plaintiff suffered numerous damages as a result.

**AS A THIRD CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER 42 U.S. CODE § 1981**
**(AGAINST ALL DEFENDANTS)**

97. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

98. 42 U.S. Code § 1981 - Equal rights under the law states provides:

(a) All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

99. Defendants constantly enforced a purposefully discriminatory pattern and practice of depriving Hispanic and other non-white individuals of the equal rights described therein, in further violation of 42 U.S.C. §1981.

100. As a result of Defendants' discrimination in violation of Section 1981, Plaintiff has been denied the enjoyment of all benefits, privileges, terms, and conditions of Plaintiff's contractual relationship which provided substantial compensation and benefits, thereby entitling him to injunctive and equitable monetary relief; and having suffered such anguish, humiliation, distress, inconvenience and loss of enjoyment of life because of Defendants' actions, thereby entitling Plaintiff to compensatory damages.

101. As alleged above, Defendants acted with malice or reckless indifference to the rights of the Plaintiff and copious other individuals named herein, thereby entitling Plaintiff to an award of punitive damages.

102. Defendants violated the above and Plaintiff suffered numerous damages as a result.

103. Plaintiff makes a claim against Defendants under all of the applicable paragraphs of 42 U.S. Code § 1981.

104. Plaintiff claims Defendants both unlawfully discriminated against Plaintiff and unlawfully retaliated against Plaintiff in violation of 42 USC 1981.

**AS A FOURTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER STATE LAW**
**(AGAINST ALL DEFENDANTS)**

105. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

106. New York State Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, [Effective January 19, 2016: familial status,] marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

107. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of Plaintiff's race, color, and national origin, as well as creating a hostile work environment and wrongfully terminating Plaintiff based on Plaintiff's membership in the aforementioned protected classes.

108. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law Section 296.

109. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A FIFTH CAUSE OF ACTION**
**FOR RETALIATION UNDER STATE LAW**
**(AGAINST ALL DEFENDANTS)**

110. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

111. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

112. Defendants engaged in an unlawful discriminatory practice by retaliating, terminating, and otherwise discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of Plaintiff's opposition to the unlawful practices of Defendants.

113. Plaintiff makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law Section 296.

114. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A SIXTH CAUSE OF ACTION**
**FOR AIDING AND ABETTING UNDER STATE LAW**
**(AGAINST ALL DEFENDANTS)**

115. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

116. New York State Executive Law §296(6) further provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

117. Defendants engaged in an unlawful discriminatory practice by aiding, abetting, compelling and/or coercing the unlawful, discriminatory, and retaliatory conduct as stated herein.

118. Plaintiff makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law Section 296.

119. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A SEVENTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**
**(AGAINST ALL DEFENDANTS)**

120. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

121. The Administrative Code of the Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienate or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

122. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff as set forth herein.

123. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York City Administrative Code Title 8.

124. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS AN EIGHTH CAUSE OF ACTION**
**FOR RETALIATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**
**(AGAINST ALL DEFENDANTS)**

125. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

126. The New York City Administrative Code Title 8, §8-107(1) (e) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter. . . "

127. Each of the Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Tide 8, §8-107(1) (e) by discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

128. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York State City Administrative Code Title 8.

129. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A NINTH CAUSE OF ACTION FOR AIDING AND ABETTING**
**UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**
**(AGAINST ALL DEFENDANTS)**

130. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

131. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

132. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling, and coercing the above discriminatory, unlawful, and retaliatory conduct.

133. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York City Administrative Code Title 8.

134. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A TENTH CAUSE OF ACTION**
**FOR INTERFERENCE UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**
**(AGAINST ALL DEFENDANTS)**

135. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint with the same force and effect as if fully set forth herein.

136. New York City Administrative Code Title 8-107(19) Interference with protected rights states, in relevant part: It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section.

137. Defendants violated the section cited herein as set forth.

138. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS AN ELEVENTH CAUSE OF ACTION**
**FOR SUPERVISOR LIABILITY UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**
**(AGAINST ALL DEFENDANTS)**

139. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint with the same force and effect as if fully set forth herein.

140. New York City Administrative Code Title 8-107(13) entitled Employer liability for discriminatory conduct by employee, agent or independent contractor provides:

    a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

    b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

    i. The employee or agent exercised managerial or supervisory responsibility; or

    ii. The employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective

action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

iii. The employer should have known of the employee's or agents discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

141. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in an amount which exceeds the jurisdiction of all lower courts for all damages including but not limited to compensatory damages, punitive damages, statutory damages, lost wages, back pay, front pay, attorney's fees, costs, interest and all other damages as well as costs and disbursements of this action as are just and proper to remedy Defendants' unlawful employment practices.

**JURY DEMAND**

Plaintiff demands a trial by jury as to all issues so triable.

Date: April 29, 2020
New York, New York

Respectfully Submitted,
**DEREK SMITH LAW GROUP, PLLC.**
*Attorneys for Plaintiff*

BY: __/s/____________________________

Danilo Bandovic, Esq.
1 Pennsylvania Plaza, 49th Floor
New York, New York 10119
(212) 587-0760