```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                                       :
LOURDES PEREZ,                                                         :
                                                                       :
                                Plaintiff,                             :
                                                                       :      20-CV-3341 (JMF)
                    -v-                                                :
                                                                       :      OPINION AND ORDER
THE PORT AUTHORITY OF NEW YORK & NEW                                   :
JERSEY et al.,                                                         :
                                                                       :
                                Defendants.                            :
                                                                       :
-----------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

      Lourdes Perez brings this action against her former employer, the Port Authority of New York & New Jersey (the "Port Authority"), and three of her former supervisors at the Port Authority, Scot Pomerantz, Joseph Brenneck, and Rick Cotton (the "Port Authority Supervisors"). In her operative Complaint, Perez alleges that Defendants subjected her to discrimination on the basis of her race and gender, retaliation, and a hostile work environment, all in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; Section 1981 of the Civil Rights Act of 1871 ("Section 1981"), 42 U.S.C. § 1981; the New York State Human Rights Law (the "NYSHRL"), N.Y. Exec. Law § 290 *et seq.*; and the New York City Human Rights Law (the "NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.* Defendants now move, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment on all of Perez's claims. For the reasons that follow, their motion is GRANTED.

## BACKGROUND

      The following facts, taken from the Complaint and admissible materials submitted in connection with the pending motion, are either undisputed or viewed in the light most favorable to Perez. *See Costello v. City of Burlington*, 632 F.3d 41, 45 (2d Cir. 2011).

Perez, a Hispanic woman, began working as a Port Authority police officer in 2002. ECF No. 1 ("Compl."), ¶¶ 9, 22. In 2008, after six years of working at other Port Authority–operated facilities, she transferred to the World Trade Center, where she eventually became a desk officer. ECF No. 73 ("SOF"), ¶¶ 5-6. As part of her duties, Perez was responsible for assigning police officers to overtime shifts. Id. ¶ 8. To the extent relevant here, she routinely assigned herself the morning shift (10:00 a.m. to 2:00 p.m.) at the 9/11 Memorial Museum (the "Museum"), which was a post inside the Museum premises and required her to be there when the doors opened. Id. ¶¶ 8-9.

Starting in 2010, Perez thrice sought promotion to the rank of Sergeant. Id. ¶¶ 21-24. The Port Authority has a long and rigorous promotion process, involving multiple levels of review and both written and in-person evaluations. Id. ¶¶ 12-20; see ECF No. 68-4, at 158-60 (outlining the general procedures the Port Authority must follow for promoting a police officer to Sergeant); ECF Nos. 68-5 to 68-8 (specific postings inviting candidates to apply for a promotion to Sergeant). The first step is a written examination that tests candidates on Port Authority procedures and rules of conduct; candidates that pass are placed on a "horizontal roster." SOF ¶ 12; see, e.g., ECF No. 168-7, at 1. Candidates on the horizontal roster are then screened for their "attendance, discipline, and history of civilian complaints and internal affairs investigations." SOF ¶ 13, 15. Those who pass the screening then participate in what is called a qualifications review meeting, or "QRM." Id. ¶ 16. At the QRM, a three-member panel interviews candidates and grades them based on a predetermined rubric, assigning each candidate an overall rating of "Major Strength," "Fully Competent," or "Needs Development." ECF No. 67 ("Ford Aff."), ¶¶ 9, 11, 13. A separate Promotion Review Board ("PRB") then reviews the QRM ratings, horizontal roster screening scores, and other factors, assigning each candidate an overall rating of "Highly Recommended," "Recommended," or "Not

2

Recommended." SOF ¶¶ 18-19. Significantly, however, a candidate who receives a "Needs Development" on his or her QRM is automatically assigned a rating of "Not Recommended." Ford Aff. ¶ 16. Finally, the list of candidates rated by the PRB as "Highly Recommended" or "Recommended" is given to the Superintendent of Public Safety, who then chooses whom to promote. SOF ¶ 20; Ford Aff. ¶ 15.

Perez's claims here arise from her third and final attempt to become a Sergeant, in 2018. After she passed the written exam, Perez sat for the QRM.[1] The three members of the QRM panel, which interviewed and rated five candidates, were white men: a retired Police Inspector, a retired Human Resources Specialist, and an active-duty Police Captain. Compl. ¶ 46; SOF ¶ 25. Following the QRM, the three interviewers rated Perez as "Needs Development," precluding her from being recommended by the PRB to the Superintendent for promotion. SOF ¶ 25. On October 4, 2018, Perez filed a complaint with the Port Authority's Equal Employment Opportunity Office (the "EEO"), claiming that she had been denied the recommendation for promotion because of her race and gender. Id. ¶ 28. After an investigation (which Perez labels a "sham," ECF No. 71 ("Pl.'s Opp'n"), at 5), the EEO determined that there was no evidence of discrimination and that Perez was not recommended for promotion because she had performed poorly at the QRM. Id. ¶ 30.

Perez claims that on October 5, 2018 — one day after she filed her EEO complaint — Defendants started subjecting her to "a discriminatory campaign of retaliation." Compl. ¶ 52. In particular, Perez points to five discrete incidents of alleged retaliation:

---

[1]  The record is unclear as to when the QRM took place. *Compare* SOF ¶ 25 ("Plaintiff participated in a QRM on July 12, 2018 . . . .") *and* Ford Aff. ¶ 20 ("Officer Perez participated in a QRM on July 12, 2018 . . . ."), *with* Compl. ¶ 46 ("On or about August 12, 2018, Defendants held a panel interview for Plaintiff . . . .") *and* ECF No. 69 (Defs.' Mem.), at 5 ("Plaintiff participated in a QRM on August 12, 2018 . . . ."). But the specific date is immaterial here.

3

- On October 5, 2018, Perez's overtime post was switched for the day, from the Museum to another location. *Id.* ¶ 53-54. Although the switch was made without her knowledge, it was done because a special event at the Museum required the same police officer to be stationed there for the whole day. (Perez was scheduled for an overtime shift at the Museum and would have had to leave at 2 p.m. to her regular desk job). SOF ¶ 34.[2]

- On October 15, 2018, Perez took a preapproved personal break during her shift. Compl. ¶ 61. During her break, Pomerantz radioed to ask where she was, as he had walked by her post and not seen anyone. SOF ¶ 38. When Perez informed him that she was on a break, Pomerantz did nothing further. *Id.* ¶ 39.[3]

- On October 18, 2018, Pomerantz assigned Perez to take a police report regarding property damage to the pools outside the Museum. *Id.* ¶¶ 40, 43. Although responsibility for the report was initially given to one or two officers working outside the Museum, Pomerantz reassigned it to Perez because the outside officer or officers were armed and would not be able to go inside the Museum to complete the report. *Id.* ¶¶ 42-43.

- On October 19, 2018, Pomerantz signed Perez's police memo book. Compl. ¶ 67; SOF ¶ 47. Although Perez alleges that Pomerantz did so for "absolutely no reason," Compl. ¶ 67, Perez does not dispute that it was within Pomerantz's authority as a supervisor to sign her memo book. SOF ¶ 46.

- Finally, on February 23, 2019, Pomerantz instructed Brenneck to speak with Perez about a mistake she had made and to remind her to be more careful. *Id.* ¶¶ 50, 55-56. The mistake (which Perez does not dispute) was Perez's failure to remove a police officer from the roll call on a day he had taken off. SOF ¶ 51. When the officer did not show up to his post, the Port Authority conducted a search for him, reaching out to family members and calling a local police department in upstate New York to conduct a home visit. *Id.* ¶ 52.[4]

---

[2]   The parties dispute whether Pomerantz was the supervisor who switched Perez's shift. *See* SOF ¶ 34. Whether he was or was not has no bearing on the Court's analysis or conclusion.

[3]   Perez disputes this statement of fact but does not cite to anything in the record to substantiate her objection. Accordingly, the statement is deemed admitted. *See Del Villar v. Hyatt Hotel Corp.*, 19-CV-10891 (JMF), 2022 WL 2316205, at *2 (S.D.N.Y. June 28, 2022). In her memorandum of law in opposition to summary judgment, Perez claims that Pomerantz canceled her break, *see* Pl.'s Opp'n 5, but she points to nothing in the record that supports that claim either. In fact, when asked directly in her deposition whether Pomerantz canceled her break, Perez responded: "I cannot remember." ECF No. 68-3 ("Perez Depo."), at 233-34.

[4]   In her memorandum of law, Perez notes two additional incidents: first, on October 8, 2018, Pomerantz called her on the radio, *see* Pl.'s Opp'n 5; and second, on October 27, 2018, a non-defendant supervisor changed her post, *see id.* But the record does not back up these claims. The portion of the record that Perez cites for the first incident actually references the October 15,

On November 5, 2018, Perez filed a second complaint with the EEO, citing the first four of these incidents and alleging that Pomerantz was retaliating against her for filing the first EEO complaint. *Id.* ¶ 33. After another investigation, the EEO concluded that Pomerantz did not retaliate against Perez because he was not involved in her promotion process and did not know that she had filed the first EEO complaint. *Id.* ¶ 49. In March 2019, Perez filed a charge with the Equal Employment Opportunity Commission (the "EEOC"), after which she filed this suit.[5]

## LEGAL STANDARDS

Summary judgment is appropriate where the admissible evidence and pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam). Such a dispute qualifies as genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18

---

2018 incident discussed above. *See id.* n.22. As for the second incident, Perez mentions it for the first time in her opposition memorandum, *see id.* at 5, but she does not dispute in her Statement of Undisputed Facts that the non-defendant supervisor "had no recollection of changing [Perez's] post . . . but . . . would only have done so based on the needs of the command." *Id.* ¶ 48. Accordingly, the Court ignores these two incidents in its analysis. In any event, considering them would not alter the Court's bottom-line conclusion.

[5]   In her deposition, Perez implies that the EEOC concluded the Port Authority did not discriminate or retaliate against her. *See* Perez Depo. 113-14. But neither the EEOC report nor Perez's notice of right to sue, *see* 29 C.F.R. § 1601.28, is in the record.

(2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *accord PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).  Critically, however, all evidence must be viewed "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Mil. & Naval Affs.*, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

To defeat a motion for summary judgment, a non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party "cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible."  *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted).  Affidavits submitted in support of, or opposition to, summary judgment must be based on "personal knowledge," must "set out facts that would be admissible in evidence," and must "show that the affiant or declarant is competent to testify on the matters stated."  *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)).  Notably, the Second Circuit has cautioned that courts should be "especially chary in handing out summary judgment in discrimination cases," as the intent of the employer is often disputed.  *Jamilik v. Yale Univ.*, 362 F. App'x 148, 149 (2d Cir. 2009) (summary order) (internal quotation marks omitted).  Nevertheless, it is "beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases."  *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001).  Indeed, just as in the non-discrimination context, "an employment discrimination plaintiff faced with a properly supported summary judgment motion must do more than simply show that there is some metaphysical doubt as to the material facts.

6

[He] must come forth with evidence sufficient to allow a reasonable jury to find in [his] favor." *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) (cleaned up). That is, a "plaintiff must produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (cleaned up).

## DISCUSSION

As noted, Perez brings discrimination, retaliation, and hostile work environment claims pursuant to Title VII, Section 1981, the NYSHRL, and the NYCHRL. Although Defendants move for summary judgment on all of her claims, *see* Defs.' Mem. 10-25, Perez fails to mention, let alone address, her claims under Section 1981, the NYSHRL, and the NYCHRL in her opposition, *see* Pl.'s Opp'n; *see also* ECF No. 72 ("Defs.' Reply"), at 1 n.1 (observing that Perez "did not oppose defendants' motion for summary judgement with respect to her § 1981 and New York State and New York City Human Rights Laws claims"). Accordingly, the Court deems her to have abandoned those claims (which includes all claims against the individual Defendants), and confines its analysis to the claims under Title VII. *See, e.g.*, *Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014) (noting that "a court may, when appropriate, infer from a party's partial opposition [to a motion for summary judgment] that relevant claims or defenses that are not defended have been abandoned"); *see also, e.g.*, *Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 142-44 (2d Cir. 2016) (finding that the plaintiff had abandoned certain claims when the defendant moved for summary judgment on all claims and the plaintiff's opposition brief "failed to support or even address the purported . . . claims . . . [and was] bereft of any *mention* of the purported . . . claims, let alone argument why the[] claims should survive summary judgment."). The Court will address each category of Title VII claim in turn.

### A. Discrimination

Perez's discrimination claim is subject to the three-step, burden-shifting framework articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See DeMuth v. U.S. Small Bus. Admin.*, 819 F. App'x 23, 25 (2d Cir. 2020) (summary order). Under that framework, a plaintiff must first establish "a *prima facie* case of discrimination." *Id.* To do so, she must show that (1) she belonged to a protected class; (2) she was qualified for the position she sought; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. *See, e.g.*, *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 251-52 (2d Cir. 2014); *accord Aulicino v. N.Y.C. Dep't of Homeless Servs.,* 580 F.3d 73, 80 (2d Cir. 2009). If the plaintiff does so, "the burden then shifts to the employer to articulate a legitimate, non-discriminatory . . . reason for the adverse action." *DeMuth*, 819 F. App'x at 25. "If the employer satisfies its burden, the plaintiff must then show that the reasons presented were a pretext for discrimination . . . ." *Id.* (internal quotation marks omitted). Notably, if the employer articulates a legitimate, non-discriminatory reason, the "plaintiff may no longer rely on the presumption raised by the prima facie case, but may still prevail by showing, without the benefit of the presumption, that the employer's determination was in fact the result of [prohibited] discrimination." *Holcomb v. Iona College*, 521 F.3d 130, 138 (2d Cir. 2008).

Here, Perez cannot even make out a *prima facie* case. For one thing, the evidence suggests that she was not, in fact, qualified for the job she sought. In particular, the QRM panel gave her a "Needs Development" rating — a rating based on her answers to a set of standard questions and a rubric for grading those answers. *See* SOF ¶ 25; ECF No. 63 (Perez's QRM

8

grading sheets).[6] Perez points to no evidence that supports a contrary finding other than her own subjective assessment and conclusory assertions about the panel's bias, but that does not suffice. *See, e.g.*, *Halkitis v. N.Y.C. Dep't of Educ.*, No. 19-CV-11753 (JMF), 2022 WL 392911, at *5 (S.D.N.Y. Feb. 9, 2022). In any event, even if she could satisfy the first three prongs of the *prima facie* test, she fails to identify any circumstances giving rise to an inference of discriminatory intent. She points to the fact that the three QRM panelists were white men, *see* Pl.'s Opp'n 9, but that fact, without more, does not support an inference of discrimination. *See, e.g.*, *Vidal v. Metro-North Commuter R.R. Co.*, No. 12-CV-248, 2014 WL 3868027, at *21 (D. Conn. 2014) ("[The argument that "[n]o minorities sat as interview panelists"] does not[] by itself . . . furnish a basis for finding pretext or discrimination."). (Were it otherwise, a plaintiff could satisfy the fourth prong of the *prima facie* test merely by showing that the relevant decisionmaker was not a member of the same protected class.) She also cites the fact that the one candidate whom the QRM panel rated higher was a white male, *see* Pl.'s Opp'n 10; SOF ¶ 26. But there is no evidence in the record regarding his qualifications, let alone showing that he was "similarly situated" to Perez "in all material respects." *See, e.g.*, *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999) (noting that "[a] plaintiff may support an inference of . . . discrimination by demonstrating that similarly situated employees [outside her protected class] were treated more favorably," but "[i]n order to make such a showing, the plaintiff must compare herself to employees who are similarly situated in all material respects" (internal quotation marks omitted)).

---

[6] The Court temporarily granted Defendants' motion to file ECF No. 63 under seal. *See* ECF No. 64. The Court concludes that the exhibit should remain under seal, substantially for the reasons stated in Defendants' letter motion. *See* ECF No. 62.

Ultimately, it does not matter if Perez can make out a *prima facie* case because her discrimination claim would fail at the third step of the *McDonnell Douglas* framework anyway. The Port Authority has indisputably proffered a legitimate, nondiscriminatory explanation for her failure to be promoted: her performance on the QRM. *See Del Villar v. Hyatt Hotel Corp.*, 19-CV-10891 (JMF), 2022 WL 2316205, at *7 (S.D.N.Y. June 28, 2022). And Perez fails to adduce any evidence, circumstantial or direct, that the QRM evaluation was unfair or that her negative rating on the QRM was a pretext for discrimination. As noted, the fact that she is a Hispanic woman and the QRM interviewers were three white men does not, without more, prove pretext. Nor does Perez's subjective view that the QRM panel was biased. *See, e.g.*, *Yu v. N.Y. State Unified Court Sys. Off. of Court Admin.*, No. 11-CV-3226 (JMF), 2013 WL 3490780, at *5 (S.D.N.Y. July 12, 2013) (ruling against Plaintiff's Title VII discrimination and failure to promote claims where, as here, "Plaintiff's claims . . . are based wholly on her personal opinion and 'feeling' that she was not treated with respect due to her race and gender"); *Kocar v. Port Auth. of New York & New Jersey*, No. 19-CV-11508 (AT), 2022 WL 624070, at *8 (S.D.N.Y. Mar. 2, 2022) (dismissing discrimination claims brought by a Port Authority employee who failed to plausibly allege that the QRM process was "conducted in a discriminatory manner"). Particularly relevant here, "where a plaintiff can provide no circumstantial evidence that negative evaluations of his job performance were unfair or improperly issued, and all objective indications show fair evaluation procedures, there is no material issue of genuine fact to be tried and, and plaintiff's claim cannot survive summary judgment." *Brenner v. City of New York Dep't of Educ.*, 132 F. Supp. 3d 407, 418 (E.D.N.Y. 2015) (cleaned up). Accordingly, Perez's discrimination claim fails.

### B. Retaliation

Perez's retaliation claim is also subject to the *McDonnell Douglas* framework. *See DeMuth*, 819 F. App'x at 25. To establish a *prima facie* case of retaliation, a plaintiff must establish that (1) she engaged in a protected activity of which the defendants were aware; (2) she was subjected to an adverse employment action; and (3) a causal connection existed between the adverse employment action and her protected activity. *Rasmy v. Marriott Int'l, Inc.*, 952 F.3d 379, 391 (2d Cir. 2020). Significantly, for purposes of Title VII retaliation claim, "an adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). "Petty slights or minor annoyances that often take place at work and that all employees experience do not constitute actionable retaliation." *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010) (cleaned up). If the plaintiff makes out a *prima facie* case of retaliation and the employer proffers a legitimate, non-retaliatory reason for the action, the burden then shifts back to the plaintiff to show that retaliation was a "but-for" cause of the employer's alleged adverse employment action. *See Vega*, 801 F.3d at 90-91.

Measured against these standards, Perez's retaliation claim fails for at least three independent reasons. First, she fails to establish that she was subjected to an adverse employment action. Put simply, the incidents of which she complains fall squarely in the "[p]etty slight" and "minor annoyance" bucket. *See, e.g.*, *Kessler v. Westchester Cty. Dep't of Soc. Servs.*, 461 F.3d 199, 207 (2d Cir. 2006) (holding that an adverse action "must be more disruptive than a mere inconvenience or an alteration of job responsibilities" (internal quotation marks and emphases omitted)); *Santiago v. Sodexo, Inc.*, No. 21-CV-534, 2022 WL 267529, at *3 (D. Conn. Jan. 26, 2022) (noting that reprimands, threats of discipline, and counseling do not,

11

without more, constitute adverse employment actions and citing cases). Second, Perez fails to establish a causal connection between her protected activity — namely, her October 4, 2018 EEO complaint — and the alleged adverse employment actions for the simple reason that there is no admissible evidence showing that Pomerantz, the alleged perpetrator of the adverse actions, even knew about the EEO complaint until later.[7] Finally, and in any event, even if Perez could establish a *prima facie* case of retaliation, the Port Authority has offered a legitimate, non-retaliatory reason for every "retaliatory" action it allegedly undertook, *see* Defs.' Mem. 15-16, and Perez offers no evidence to show that "the [alleged] adverse action[s] would not have occurred in the absence of the retaliatory motive," *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013). At bottom, Perez points to little more than the temporal proximity of her EEO complaint and the alleged adverse employment actions. *See* Pl.'s Opp'n 13-14. But "[t]emporal proximity alone is insufficient to defeat summary judgment at the pretext stage." *Zann Kwan*, 737 F.3d at 847. Thus, Defendants' motion for summary judgment is granted as to the retaliation claim as well.

---

[7] Pomerantz testified that he did not know about Perez's October 4, 2018 EEO complaint until April 2019 — after all the alleged acts of retaliation had occurred. *See* ECF No. 68-18, at 14-15, 62. The EEO investigator testified that Pomerantz was not told about Perez's first EEO complaint until at least November 2018. *See* ECF No. 68-14 ("Dunson-Harrison Depo."), at 50, 70-71. Thus, at the earliest, Pomerantz learned of the complaint in November 2018, *after* four of the five acts of alleged retaliation had occurred. In the face of that evidence, Perez insists Pomerantz must have known about the complaint given that he allegedly began retaliating against the next day. *See, e.g.*, Compl. ¶ 52. But that is pure speculation, not to mention circular logic. Perez also relies on the testimony of another Port Authority supervisor that he had been informed by the EEO of an unrelated complaint at his command to prevent any retaliation. *See* Pl.'s Opp'n 14. But that is not evidence that Pomerantz knew of Perez's complaint. Moreover, the EEO investigator explained that, here, there was no reason to notify Perez's command because Perez's complaint involved the Human Resources Department rather than her command. *See* Dunson-Harrison Depo. 55; SOF ¶ 49.

## C. Hostile Work Environment

Perez's final Title VII claim — for a hostile work environment — can be swiftly rejected as well. To succeed on a hostile work environment claim, Title VII requires a plaintiff to "show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002); *accord Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014). That showing requires a plaintiff to identify incidents that are "more than episodic; [the incidents] must be sufficiently continuous and concerted in order to be deemed pervasive." *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997) (internal quotation marks omitted). "In considering whether a plaintiff has met this burden, courts should examine the totality of the circumstances, including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the victim's job performance." *Rivera*, 743 F.3d at 20 (internal quotation marks omitted) (cleaned up). A hostile work environment claim "is actionable under Title VII only when it occurs because of . . . [a] protected characteristic." *Brown*, 257 F.3d at 252.

Perez does not come close to meeting these standards. Indeed, her claim is based on nothing more than the facts and allegations that underlie her claims of discrimination and retaliation. *See* Pl.'s Opp'n 16 ("Defendants subjected Plaintiff to a hostile work environment by failing to promote her because of her sex, race, and color, and the discriminatory and retaliatory treatment that followed after she complained about the discriminatory treatment."). Given that those claims failed as a matter of law, it follows *a fortiori* that Perez cannot establish a hostile work environment based on the same facts. On top of that, it is well established that "[h]ostile work environment is not a vehicle for resurrecting . . . claims of discrimination and retaliation; it

is a wholly separate cause of action designed to address other types of work place behavior, like constant jokes and ridicule or physical intimidation." *Magadia v. Napolitano*, 06-CV-14386 (CM), 2009 WL 510739, at *17 (S.D.N.Y. Feb. 26, 2009) (emphasis omitted).  Thus, Perez "cannot piggyback the discrete adverse acts about which [s]he complains onto hostile work environment." *Id.*  Finally, and in any event, Perez does not come close to showing that Defendants "engaged in *enough* activity to make out an actionable hostile environment claim." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) (emphasis added).  Put simply, the five incidents to which Perez points are not "sufficiently continuous and concerted in order to be deemed pervasive." *Littlejohn v. City of New York*, 795 F.3d 297, 321 (2d Cir. 2015); *accord Maragh v. Roosevelt Island Operating Corp.*, 16-CV-7530 (JMF), 2021 WL 3501238, at *9 (S.D.N.Y. Aug. 5, 2021).

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED, and Perez's claims are dismissed in their entirety.  The Clerk of Court is directed to terminate ECF No. 65, to enter judgment consistent with this Opinion and Order, and to close the case.

SO ORDERED.

Dated: September 28, 2022
New York, New York

_____
JESSE M. FURMAN
United States District Judge